IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| MILTON ROSS,<br><br>      Plaintiff,<br><br>      v.<br><br>DR. OLATUNJI AWE, and CYNTHIA RIVERS,<br><br>      Defendants. | CIVIL ACTION NO.: 4:19-cv-201 |

**O R D E R**

Plaintiff Milton Ross brought Eighth Amendment deliberate indifference and First Amendment retaliation claims against Defendants Dr. Olatunji Awe and Cynthia Rivers. (Doc. 41, pp. 12-17.)  Defendants moved to exclude testimony from Ross' expert Dr. Jay Shulman (the "Daubert Motion"), (doc. 61), and for summary judgment on all of Ross' claims, (doc. 60). The Magistrate Judge granted the Daubert motion, in part, and denied it, in part.  (Doc. 75, p. 65.) He recommended that Defendants' summary judgment request be granted as to Ross' retaliation claim against Awe, and his deliberate indifference and retaliation claims against Rivers.  (Id., pp. 65-66.)  Based on the partial grant of the Daubert motion, the Magistrate Judge deferred ruling on the summary judgment request as to Ross' deliberate indifference claims against Awe, and afforded the parties an opportunity to submit additional briefing on the issue.  (Id., p. 66.)  Ross objects to several portions of the Magistrate Judge's disposition of the Daubert Motion.  (Doc. 77, pp. 5-8.)  He also objects to the Magistrate Judge's recommendation that summary judgment be granted as to the retaliation claim against Awe.  (Doc. 77 at 8.)  He does not object to the recommendation that summary judgment be granted as to all of his claims against Rivers.  (See

generally doc. 77.) For the following reasons, Ross' objections are **OVERRULED** and the Magistrate Judge's disposition of the Daubert Motion is **AFFIRMED**. (Doc. 75.) The Court **ADOPTS** the unobjected-to recommendation that summary judgment be granted on all of Ross' claims against Rivers. Finally, as discussed below, the Court **DEFERS** ruling on the Motion for Summary Judgment on Ross' deliberate indifference and retaliation claims against Awe pending additional briefing.

## BACKGROUND

As the Magistrate Judge explained in his Report and Recommendation ("R&R"), Ross accidentally flushed his top denture down a toilet while incarcerated at Coastal State Prison ("CSP") on May 23, 2018. (Doc. 75, p. 2 (citing doc. 60-2, p. 5; doc. 67-7, p. 7; doc. 60-20, p. 6.)) He did not receive a replacement denture until approximately 16 months later. (Id. (citing doc. 60-15, p. 96.)) He testified that he suffered cuts and blisters on his gum, difficulty chewing, weight loss, and difficulty sleeping as a result of the denture issue. (See, e.g., doc. 60-20, p. 24.) He alleges that Awe, CSP's medical director, and Rivers, CSP's Chief Counselor and Grievance Coordinator, were deliberately indifferent by failing to facilitate his access to replacement dentures. (Doc. 41, p. 13.) He alleges both defendants refused to facilitate his access to dentures as retaliation because he filed a prior unrelated lawsuit against another CSP official. (Id., pp. 15-16.)

Awe met with Ross monthly to renew Ross' Fentanyl prescription to treat his chronic back and leg pain. (Doc. 60-2, p. 5; doc. 67-7, p. 7.) Ross testified that he told Awe about the denture issue "every time" he met with Awe, including during an appointment within several days of losing the denture. (Doc. 60-20, pp. 8, 11.) By contrast, Awe maintains that he did not learn of the lost denture until Ross' October 4, 2018 appointment. (Doc. 60-4, pp. 2-6.) The Medical Encounter

2

Form Awe generated from that appointment indicates that Ross complained to Awe about pain and swelling in his gum. (Doc. 60-2, p. 11; doc. 67-7, pp. 13-14.) Awe diagnosed Ross with chronic low back and leg pain with spasm and acute gingivitis secondary to dentures. (Doc. 60-2, p. 11; doc. 67-7, p. 14.) Awe renewed Ross' Fentanyl patch, prescribed an antibiotic, and told Ross to increase his dental hygiene and follow up with a dentist. (Doc. 60-2, p. 11; doc. 67-7, p. 14.)

CSP contracted with a company to provide dental services to its inmates. (Doc. 60-2, p. 2; doc. 67-7, p. 3.) The company did not have an in-house dentist assigned to CSP from "early 2018" until November 2018, when Dr. David Gevirtz began working at the prison. (Doc. 60-2, pp. 2-3; doc. 67-7, p. 3.) Gevirtz met with Ross for the first time on January 10, 2019. (Doc. 60-2, p. 12; doc. 67-7, p. 15.) Gevirtz identified a "denture sore spot" on Ross' lower arch, "just from the lower denture rubbing his gum." (Doc. 60-2, pp. 12-13; doc. 67-7, p. 15.) He testified that "[w]hat was bothering [Ross] was that he had a sore spot from the lower denture from the–we call it the flange or the edge of the lower denture just rubbing into the gum." (Doc. 60-2, pp. 12-13; doc. 67-7, p. 15.) He filed down the length of the flange that was rubbing against Ross' lower gum at the appointment. (Doc. 60-2, p. 13; doc. 67-7, p. 15.) Gevirtz testified that this procedure "took away all the inflammation." (Doc. 60-15, p. 103.) Ross testifies that "when [Gevirtz] filed [it] down it got [worse]." (Doc. 60-20, p.14.) Ross received new upper and lower dentures from Gevirtz on October 3, 2019. (Doc. 60-2, p. 14; doc. 67-7, p. 16.)

Rivers oversaw the prison grievance procedure during the period Ross did not have his dentures. (Doc. 60-2, p. 2; doc. 67-7, p. 2.) She testified that after she became aware of Ross' denture issue, she "went to [the] dental [department] to find out what was going on[.]" (Doc. 60-18, p. 77.) After Gevirtz started working at the prison, she "[let] him know what was going on

3

with [Ross'] dentures." (Id.) Throughout the period when Ross did not have his top denture, both Awe and Rivers were aware that Ross previously filed a lawsuit against a prison official. (Doc. 60-2, p. 17; doc. 67-7, p. 20.)

## ANALYSIS

### I. The Magistrate Judge's disposition of the Daubert Motion is affirmed.

Ross challenges the Magistrate Judge's exclusion of several of Shulman's specific opinions. (Doc. 77, pp. 5-8.) The statute governing referrals to the Magistrate Judge and the Federal Rules and this Court's Local Rules all establish that the disposition of the Daubert Motion is subject to clearly-erroneous or contrary-to-law review. See 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); S.D. Ga. L. Civ. R. 72.2; see also Stewart v. Johnson, 2021 WL 6752312, at *1 (S.D. Ga. Aug. 10, 2021). "A ruling is clearly erroneous where either the magistrate judge abused his discretion or the district court, after reviewing the entirety of the record, 'is left with a definite and firm conviction that a mistake has been made.' " Jackson v. Deen, 2013 WL 3991793, at *2 (S.D. Ga. Aug. 2, 2013) (citing Pigott v. Sanibel Dev., LLC, 2008 WL 2937804, at *5 (S.D. Ala. July 23, 2008)). A decision by the magistrate judge is contrary to law when it "fails to follow or misapplies the applicable law." Id. (citations omitted).

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the United States Supreme Court interpreted Federal Rule of Evidence 702 ("Rule 702"), which governs expert testimony. The Supreme Court "made abundantly clear" that Rule 702 "compels the district courts to perform the critical 'gatekeeping' function concerning the admissibility of expert scientific evidence." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (emphasis in original) (citing Daubert, 509 U.S. at 589 n.7, 597). The Supreme Court later held that "Daubert's general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only

4

to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) (citing Fed. R. Evid. 702). Having incorporated these decisions, amended Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Eleventh Circuit has established a three-pronged inquiry encompassing the requirements of Daubert and its progeny and Rule 702. Under this inquiry, a court determining the admissibility of expert testimony must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Frazier, 387 F.3d at 1260 (citations omitted); see also Prosper v. Martin, 989 F.3d 1242, 1249 (11th Cir. 2021). The proponent of the expert opinion bears the burden of establishing qualification, reliability, and helpfulness by a preponderance of the evidence. Daubert, 509 U.S. at 592, n.10. The ultimate objective of a court's Daubert gatekeeping function is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152.

5

As discussed below, Ross' objections to the Magistrate Judge's R&R relate to Daubert's "reliability" and "helpfulness" prongs. Reliability "remains a discrete, independent, and important requirement for admissibility." Frazier, 387 F.3d at 1261. The Supreme Court in Daubert "set out a list of 'general observations' for determining whether expert testimony is sufficiently reliable to be admitted under Rule 702." United States v. Brown, 415 F.3d 1257, 1267 (11th Cir. 2005) (citation omitted). These factors or observations inquire into the expert's "theory or technique" and are: "(1) whether it can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) what its known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the field." Id. (citation omitted). "Sometimes the specific Daubert factors will aid in determining reliability; sometimes other questions may be more useful. As a result, 'the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.' " Frazier, 387 F.3d at 1262 (quoting Kumho Tire, 526 U.S. at 152). "Indeed, the Committee Note to the 2000 Amendments of Rule 702 expressly says that, '[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.' " Id. at 1261 (emphasis in original).

Expert opinion testimony must also assist the trier of fact. Fed. R. Evid. 702(a). "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." Frazier, 387 F.3d at 1262 (citation omitted). Proffered expert testimony generally will not help the trier of fact, and is inadmissible, "when it offers nothing more than what lawyers for the parties can argue in closing arguments." Cook v. Sheriff

6

of Monroe Cty., 402 F.3d 1092, 1111 (11th Cir. 2005) (citation omitted). Stated differently, expert testimony that offers something "beyond the understanding and experience of the average citizen" helps the trier of fact and can be admitted. Id. (quoting United States v. Rouco, 765 F.2d 983, 995 (11th Cir. 1985)). Additionally, "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." Prosper, 989 F.3d at 1249 (quoting Daubert, 509 U.S. at 591).

A. Shulman's opinions regarding what Awe "should have known."

Ross objects to the Magistrate Judge's exclusion of Shulman's opinions regarding what Awe "should have known" based on his interactions with Ross. (Doc. 77, p. 5.) As the Magistrate Judge explained, Ross must show that Awe was deliberately indifferent to his serious medical need to prevail on his Eighth Amendment inadequate medical care claim. (Doc. 75, p. 21 (citing Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007).) Since deliberate indifference is a subjective standard, Ross must show that Awe "actually knew that a substantial risk of serious harm existed[.]" Byner v. Dunn, 2022 WL 3367523, at *9 (M.D. Ala. July 11, 2022). Accordingly, "expert testimony regarding what an expert 'should have known' is generally not relevant or helpful to a jury in a deliberate indifference case." (Doc. 75, p. 22 (citing Gomez v. Palmer, 2016 WL 212952, at *6 (N.D. Ill. Jan. 19, 2016).) As the Magistrate Judge explained, however, evidence regarding what an individual "should have known" may be admissible to the extent it is offered as circumstantial evidence of the "obviousness" of a substantial risk of harm. (Id., pp. 22-23 (citing, e.g., Pittman v. Cnty. of Madison, 2015 WL 12743585, at *3 (S.D. Ill. Feb. 10, 2015).) The Magistrate Judge excluded Shulman's opinions regarding what Awe "should have known" because Ross bears the burden of establishing their admissibility, Ajibade v. Wilcher,

7

2018 WL 2930525, at *2 (S.D. Ga. June 11, 2018), and he did not show that they are admissible opinions regarding the "obviousness" of a risk to Ross. (Doc. 75, pp. 23-24.)

In his objections to the R&R, Ross argues, for the first time, that these opinions are circumstantial evidence regarding the obviousness of a risk to Ross:

> In putting forth the opinion that Dr. Awe "should have known" certain facts about Mr. Ross's dental condition, . . . Dr. Shulman—*who is not an attorney*—did not use the phrase "should have known" to convey any kind of legal meaning. Rather, Dr. Shulman did exactly what a medical expert is permitted to do: he reviewed the relevant documents and deposition testimony and concluded, based on his extensive correctional dentistry and broader medical background, that to a medical professional, the condition of Mr. Ross's mouth would have been obvious as of May 29, 2018. The fact that the painful condition of Mr. Ross's mouth would have been obvious as of May 29, 2018 is relevant to the issues in this case because a prison official's knowledge of a serious risk of harm may be inferred from "the very fact that the risk was obvious."

(Doc. 77, pp. 5-6 (quotations and citations omitted) (emphasis in original).)[1] "[A] district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge." Williams v. McNeil, 557 F.3d 1287, 1292 (11th Cir. 2009). The Court declines to consider the argument here because "it would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable [disposition]—shift gears before the district judge." Id. at 1291-92.

Additionally, the undersigned concurs with the Magistrate Judge, (doc. 75, p. 24 n.10), that Shulman's opinion that "there is record evidence suggesting that [Awe] . . . should have known" about Ross' dental condition because Ross told him about the dental condition would not be helpful to a jury under Daubert's third prong. (Doc. 61-2, pp. 9-10.) Ross does not explain in his objection, (doc. 77, pp. 5-6), why this testimony is "beyond the understanding of the average lay

---

[1] (See also doc. 66, pp. 12, 16-17 (Ross did not raise this argument in his response to Awe's *Daubert* Motion).)

person." Frazier, 387 F.3d at 1262. Accordingly, the Magistrate Judge's exclusion of Shulman's opinions regarding what Awe "should have known" is not clearly erroneous and is, therefore, **AFFIRMED**.

    B. <u>Shulman's opinions regarding Awe's obligation and ability to facilitate a dental referral.</u>

Ross also argues that the Magistrate Judge's exclusion of the following two opinions was clearly erroneous:

- "While Dr. Awe had neither the training nor the facilities to adjust the denture himself, he had an obligation to refer his patient to a clinician who could." (Doc. 77, p. 6.)
- Awe "could have reached out to the state dental director (or other appropriate authority) to facilitate a referral on behalf of his patient." (Doc. 77, p. 6 (quoting doc. 61-2, pp. 10-11, in part.)

The Magistrate Judge held that Ross did not show that Shulman explained how he applied his experience to reach these opinions. (See doc. 75, pp. 28-30, 34-35 (citing, e.g., Frazier, 387 F.3d at 1261).) Ross asserts the same argument to object to the exclusion of both opinions:

> Dr. Shulman's opinions are not (and need not be) specifically based on his correctional dentistry experience, as the Magistrate Judge seemed to assume. . . . Rather, the opinions are consistent with and grounded in a fundamental tenet of providing medical care that applies to all medical practitioners. . . . Dr. Shulman, who has fifty years of professional dentistry experience, is undoubtedly qualified to offer opinions on a basic obligation common to dentists and all other medical providers alike[.]

(Doc. 77, pp. 6-7 (citing, e.g., The Hippocratic Oath).) The Magistrate Judge excluded the first opinion because Shulman's report is silent as to "how his experience led him to a conclusion regarding a non-dentist's 'obligation' to facilitate a referral for a 'denture [adjustment].' " (Doc. 75, pp. 29-30.) Although medically-trained experts may generally testify about "fundamental tenet[s] of providing medical care that applies to all medical practitioners", Ross still fails to explain how his experience led him to an opinion regarding a prison medical director's "obligation" to refer a patient for a specific procedure, *i.e.*, a denture adjustment, when faced with

9

a patient exhibiting Ross' alleged symptoms.[2]  (See doc. 77, pp. 6-7.)  Accordingly, the Court cannot conclude that the Magistrate Judge was clearly erroneous in excluding this opinion.

The Magistrate Judge excluded Shulman's opinion that Awe "could have reached out to the state dental director (or other appropriate authority)" to facilitate Ross' referral because "[Shulman's] report does not explain why his experience led him to his conclusions about a specific Georgia DOC official's ability to facilitate a referral for dental care."  (Doc. 75, pp. 34-35.)  Since Ross does not explain in his objections why it is a "fundamental tenet of providing medical care [applicable] to all medical practitioners" that Awe could have facilitated a referral by contacting an official in the Georgia state prison system, the Court cannot conclude that the Magistrate Judge was clearly erroneous in excluding this opinion.  The exclusion of these two opinions is therefore **AFFIRMED**.

**II.     Defendants' Summary Judgment Motion**

   A.  Ross' claims against Rivers are dismissed.

No party objects to the Magistrate Judge's recommendation that Defendants' motion for summary judgment be granted as to all claims against Rivers.  (See generally doc. 77.)  After a careful de novo review of the entire record, the Court concurs with those recommendations, and **ADOPTS** them as its opinion.  For the reasons discussed by the Magistrate Judge, Defendants'

---

[2]  Ross' objection references opinions regarding the general duties of medical professionals, which the Magistrate Judge did not exclude.  (See doc. 77, pp. 6-7 (citing, e.g., Whitt v. Wigington, 2011 WL 1576707, at *2 (N.D. Ga. Apr. 26, 2011) ("The Supreme Court has recognized 'the government's obligation to provide medical care for those whom it is punishing by incarceration.' "); Neade v. Portes, 739 N.E.2d 496, 507 (Ill. 2000) ("Physicians have professional ethical, moral and legal obligations to provide appropriate medical care to their patients[.]" (Harrison, C.J., dissenting)).)  To the extent Ross seeks clarification from the Court regarding whether one of Shulman's specific opinions on the general duties of physicians is admissible, he is free to move for clarification.

motion for summary judgment as to Ross' claims against Rivers is **GRANTED**.  (Doc. 60, in part.)

> B. The Court defers ruling on Ross' claims against Awe pending additional briefing.

As discussed above, in light of the exclusion of several of Shulman's opinions, the Magistrate Judge deferred making a recommendation on Defendants' request for summary judgment on Ross' deliberate indifference claims against Awe, and directed the parties to file additional briefing on the issue.  (Doc. 75, p. 47; see also doc. 76.)  He also recommended that Defendants' request for summary judgment on Ross' deliberate indifference claim against Awe be granted.  (Doc. 75, p. 60.)  Ross objected to that recommendation; however, he also requested that the Court "defer ruling on the retaliation claim until after the parties have submitted their supplemental briefing on the deliberate indifference claim still pending against Dr. Awe."  (Doc. 77, p. 9.)  No party opposes that request. See generally docket.  The Court **GRANTS** the unopposed request, and **DEFERS** ruling on Defendants' summary judgment request as to Ross' deliberate indifference and retaliation claims against Awe pending additional briefing consistent with the Magistrate Judge's instructions.[3]

---

[3] By deferring ruling on Ross' retaliation claims against Awe, the Court does not alter the scope of the additional briefing set in the Magistrate Judge's prior Order, (doc. 75).

## **CONCLUSION**

For the foregoing reasons, the Magistrate Judge's disposition, (doc. 75), of the Daubert Motion, (doc. 61), is **AFFIRMED**. Defendants' request for summary judgment on Ross' claims against Rivers is **GRANTED**. (Doc. 60, in part.) The Court **DEFERS** ruling on Defendants' remaining requests for summary judgment pending additional briefing on Ross' deliberate indifference claim and retaliation claim against Awe.

**SO ORDERED**, this 2nd day of November, 2022.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA