## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| MILTON ROSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV419-201 |
| | ) | |
| DR. OLATUNJI AWE, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Milton Ross brought Eighth Amendment deliberate indifference and First Amendment retaliation claims under 42 U.S.C. § 1983 against Defendants Dr. Olatunji Awe and Cynthia Rivers related to his allegedly inadequate medical care at Coastal State Prison ("CSP"). Doc. 41 at 1, 12-17 (Amended Complaint). The District Judge granted Defendants' Motion for Summary Judgment, doc. 60, to the extent it sought dismissal of all claims against Rivers. Doc. 78 at 12. However, he reserved ruling on Defendants' Motion for Summary Judgment to the extent it sought dismissal of Ross' claims against Awe pending additional briefing on the deliberate indifference claim against Awe. *See id.* at 11-12. Awe submitted a supplemental brief, doc. 79, Ross responded, doc.

83, and Awe replied, doc. 87.   For the following reasons, summary judgment should be **GRANTED** on Plaintiff's deliberate indifference and retaliation claims against Awe.   Doc. 60, in part, as supplemented, doc. 79.

## BACKGROUND

On May 23, 2018, while incarcerated at Coastal State Prison ("CSP"), Ross accidentally flushed his upper denture down a toilet.   Doc. 79-2 at 5; doc. 83-2 at 5.   He did not obtain a replacement denture until approximately 16 months later.   *See* doc. 60-15 at 111; doc. 41 at 1 (Amended Complaint).   Ross testified that he experienced cuts and blisters on his gum, difficulty chewing, weight loss, and difficulty sleeping throughout this period.   *See, e.g.*, doc. 60-20 at 24.   He brought Eighth Amendment deliberate indifference claims against Awe, CSP's Medical Director, and Rivers, CSP's Chief Counselor and Grievance Coordinator, for their alleged failure to provide him access to "necessary dental care—*i.e.*, replacement dentures—for over 16 months."   Doc. 41 at 13.   He also brought retaliation claims against those defendants, alleging they failed to facilitate his dental care because he filed a prior unrelated lawsuit against another CSP official.   *Id.* at 15-16.

As discussed in the Court's prior Report and Recommendation, ("R&R"), doc. 75 at 2-13, Awe met with Ross approximately monthly to renew Ross' Fentanyl prescription to treat his chronic back and leg pain. *See* doc. 79-2 at 4; doc. 83-2 at 5. Awe and Ross disagree about the substance of their conversations during these appointments, and thus about when Awe first learned of the missing denture and Ross' dental conditions. Awe asserts that he first learned that Ross lost his denture during their October 4, 2018 appointment. Doc. 60-4 at 2-6 (Awe's Declaration). Awe explains that he would have noted Ross' complaints regarding his mouth in the Medical Encounter Forms he generated from their appointments; however, those forms do not include such a notation. *Id.* By contrast, Ross testified that he told Awe about his missing denture and related symptoms "every time" the two met, including during an appointment within a day or two of losing the denture. Doc. 60-20 at 8, *see also id.* at 11.

The parties do not dispute other aspects of the monthly appointments. For example, CSP staff recorded Ross' weight at each appointment, which progressively decreased from 141 pounds on May 1,

2018, to 133 or 135 pounds on July 23, 2018.[1]  Ross' weight fluctuated between 138 and 139 pounds at his July 31, August 20, and September 13, 2018 appointments.  Doc. 79-2 at 6-7; doc. 83-2 at 8-9.  His weight fluctuated between 141 and 143 pounds at his October 4, 2018 appointment, his three appointments in November 2018, and his appointments in December 2018 and January 2019.[2]

The parties also agree that Awe provided certain prescriptions for Ross at each appointment.  Awe renewed Ross' Fentanyl prescription on approximate 30-day intervals.  *See, e.g.*, doc. 79-2 at 4; doc. 83-2 at 5.  At the May 29, 2018 appointment, Awe prescribed Ensure, a liquid dietary supplement.[3]  Doc. 79-2 at 5; doc. 83-2 at 6.  At the July 31, 2018 appointment, Awe noted that Ross' weight was "stable", though he was

---

[1]  Before the May 29, 2018 appointment, a nurse recorded that Ross weighed 137.4 pounds, which is less than his weight of 141 pounds recorded on May 1, 2018.  Doc. 79-2 at 5; doc. 83-2 at 6.  At his June 25, 2018 appointment, a nurse recorded his weight as 134.6 pounds. Doc. 79-2 at 5; doc. 83-2 at 7. At his July 23, 2018 appointment, a nurse recorded Ross' weight as 133 pounds.  Doc. 79-2 at 6; doc. 83-2 at 7-8 (the parties agree that a nurse "review[ing]" this Medical Encounter Form "interpreted" Ross' weight on July 23, 2018 to be 135 pounds).

[2]  As discussed below, Ross also met with Dr. Gevirtz, the prison's new dentist, in January 2019.  Doc. 79-2 at 9; doc. 83-2 at 11.

[3]  *See also* doc. 60-10 at 80 (Awe testified that although he does not specifically recall why he prescribed Ensure, he notes that Ross' "weight drop might have been the reason why [he] wrote the Ensure for [Ross] at that time.").

4

underweight.  Doc. 79-2 at 7; doc. 83-2 at 8.  He also noted that Ross "can't take Ensure", and prescribed an "additional snack" instead.  Doc. 79-2 at 7; doc. 83-2 at 8; *see also* doc. 60-20 at 12 (Ross testified that the "additional snack" the prison provided was a bologna sandwich).  At the October 4, 2018 appointment, Awe diagnosed Ross with chronic back and leg pain, and "acute gingivitis secondary to dentures."  Doc. 79-2 at 8; doc. 83-2 at 10.  Awe renewed Ross' Fentanyl patch, prescribed the antibiotic Augmentin, and told Ross to increase his dental hygiene and follow up with a dentist.  Doc. 79-2 at 8; doc. 83-2 at 10.

During the relevant time, CSP contracted with MHN Centurion ("MHN"), a company providing dental services to the Georgia Department of Corrections, to provide dental services to inmates.  Doc. 79-2 at 2; doc. 83-2 at 3.  MHN did not have an in-house dentist assigned to CSP from "early 2018" until November 2018, when Dr. David Gevirtz began working at the prison.  Doc. 79-2 at 2; doc. 83-2 at 3.  Gevirtz testified that:

> . . . Ross had already been placed on the denture list long before I got there.  And, you know, when I first got there, it was basically just getting through a mountain of acute infections that were urgently needed to be treated, you know. You know, the lowest priority at that point was making dentures, not only for . . . Ross, but every other offender who

> was on the denture list before him[.] . . . It was the people who
> were in agony and were swollen and infected.  They came first.
> You know, . . . on the triage level.

Doc. 60-15 at 107-08.  Gevirtz met with Ross for the first time on January

10, 2019.  Doc. 79-2 at 9; doc. 83-2 at 11.  Gevirtz testified that he did not

see any cuts, swelling, or bleeding in Ross' top arch.  Doc. 79-2 at 9; doc.

83-2 at 11.  Gevirtz identified a "denture sore spot" on Ross' lower arch,

"just from the lower denture rubbing his gum."  Doc. 60-15 at 102.  He

filed down the length of the flange that was rubbing against Ross' lower

gum at the appointment.  Doc. 79-2 at 9; doc. 83-2 at 11-12.

On June 25, 2019, Gevirtz made impressions for Ross' upper and

lower dentures.  Doc. 79-2 at 10; doc. 83-2 at 12.  Ross received new upper

and lower dentures from Gevirtz on October 3, 2019.  Doc. 79-2 at 10; doc.

83-2 at 13.  Gevirtz testified that he did not observe cuts, swelling,

bleeding, or inflammation in Ross' mouth at the June 25, 2019

appointment.  Doc. 79-2 at 10; doc. 83-2 at 12-13; *see also* doc. 60-15 at

110 (asserting that "if there was any kind of infection, obviously swelling,

cuts or anything that required antibiotic, it would have been noted[.]").[4]

---

[4] In Ross' Responses to Awe's Statement of Undisputed Material Facts, Ross disputes
that Gevirtz did not see mouth inflammation at this appointment, explaining that
Ross testified that "his discomfort subsided only after he got dentures[.]"  Doc. 83-2
at 13.  Specifically, he testified:

Ross contends that Awe's inaction is related to Ross' prior litigation against another prison official.  Doc. 41 at 15.  During the period when Ross was missing his denture, Awe was aware of Ross' previously-filed lawsuit against Dr. Fogham, a former CSP employee.  Doc. 60-2 at 14; doc. 67-7 at 17.  Awe asserts that this knowledge did not impact his treatment of Ross. Doc. 60-4 at 8-9.  Ross testified that Awe told him " 'I done got you some antibiotic for your mouth.  So I know you fixing to go do whatever you're going to do.  You're fixing to write some grievance up on me or file a lawsuit.'  He said, 'it ain't going nowhere.'  He said, 'go do what you're going to do.' "  Doc. 60-20 at 22.  Additionally, Ross brought deliberate indifference and retaliation claims against Cynthia Rivers, CSP's Chief Counselor and Grievance Coordinator at CSP from 2016 through 2020.  Doc. 60-2 at 2; doc. 67-7 at 2; doc. 41 at 12-17.

---

> The only thing that's going on in my mouth [now] is this soreness up under my jawbone, but it ain't as bad as when I was in prison. . . . I got hanging [skin in my mouth now.] It was some more, but some of it done healed a little bit. . . . But they – he said they were going to get me surgery to get that cut out of there before they . . . make some dentures, but they didn't do that, either. But I . . . didn't want it, but since he went ahead and put some dentures in my mouth I was happy with that.

Doc. 60-20 at 25.

In a prior R&R, the undersigned recommended that the District Judge grant Defendants' motion for summary judgment, doc. 60, as to all claims against Rivers, and as to Ross' retaliation claim against Awe. Doc. 75 at 65-66. The undersigned, however, deferred ruling on Defendants' request for summary judgment as to Ross' deliberate indifference claim against Awe. *Id.* at 66. Although the undersigned found that a reasonable jury could find that Ross had a "serious medical need" sufficient to sustain an Eighth Amendment claim, the undersigned directed the parties to submit additional briefing on the limited issue of whether Awe was deliberately indifferent to the serious medical need. *Id.* at 45-48.

No party objected to the recommendation that all claims against Rivers be dismissed, and the District Judge adopted that recommendation. Doc. 78 at 10-11. Ross objected to the recommendation that the motion for summary judgment on the retaliation claim against Awe be granted; however, Awe also requested that the District Judge defer ruling on Ross' retaliation claim against Awe until the parties submit their additional briefing on the deliberate indifference issue. *See* doc. 77 at 8-10. The District Judge deferred ruling on Awe's request for

summary judgment on both the deliberate indifference and retaliation claims against him.  Doc. 78 at 11; *see also id.* at 11 n.3 ("By deferring ruling on Ross' retaliation claims against Awe, the [District Judge] does not alter the scope of the additional briefing set in the Magistrate Judge's prior Order, [doc. 75].").  Awe subsequently filed a Supplementary Motion for Summary Judgment, doc. 79, and an accompanying renewed Statement of Undisputed Material Facts, doc. 79-2.[5]  Ross responded, doc. 83; *see also* doc. 83-2 (Ross' response to Awe's renewed Statement of Undisputed Material Facts), and Awe replied.  Doc. 47.

## ANALYSIS

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'"  *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the "evidence is such that a reasonable

---

[5]   In the prior R&R, the Court authorized Awe to "file a supplemental brief, and supporting materials including, but not limited to, amended statements of material facts[.]"  Doc. 75 at 47.

jury could return a verdict for the nonmoving party." *Id.* The moving party bears the burden of making the required showing. *See Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003).

When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. *See Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. *Anderson*, 477 U.S. at 257. Where the nonmovant attempts to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party. *Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee*

*County, Fla.*, 630 F.3d 1346, 1353 (11th Cir. 2011) (citing *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 616 (11th Cir. 2007)).  However, "facts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* (emphasis and citations omitted).  Moreover, although all reasonable inferences are to be drawn in favor of the nonmoving party, "an inference based on speculation and conjecture is not reasonable." *Avenue CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013) (internal quotation marks and citation omitted).

I.  <u>Awe is entitled to summary judgment on Ross' deliberate indifference claim.</u>

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that the Eighth Amendment proscription against cruel and unusual punishment prevents prison personnel from subjecting an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.  The Court cautioned, however, that

not every allegation of inadequate medical treatment states a constitutional violation. *Id.* at 105. A prisoner's mere disagreement with the medical care provided does not amount to a constitutional violation. *See McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted) ("However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' "); *see also, e.g., Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985). "Medical treatment violates the eighth amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (internal citation omitted).

To prevail on his deliberate-indifference claim, Ross must: 1) satisfy an "objective component" by showing that he had a serious medical need; 2) satisfy a "subjective component" by showing that Awe acted with deliberate indifference to his serious medical need; and 3) show that the injury was caused by the Awe's wrongful conduct. *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is objectively serious if it has been "diagnosed by a physician as mandating treatment

or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (internal quotation marks and citation omitted).  If Ross satisfies this objective component, then under the subjective component he must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence.  *See id.* at 1327.

The undersigned previously found that based on Ross' testimony, "a [reasonable] jury could conclude that he suffered from a serious medical need caused by his missing denture."  Doc. 75 at 44-45; *see also, e.g., Newsome v. Prison Health Serv., Inc.*, 2009 WL 1469203, at *5 (S.D. Ga. May 29, 2009) ("It is universally recognized that a dental problem of whatever nature that results in significant pain qualifies as a serious medical need.").  Accordingly, his claim depends upon whether he can satisfy the subjective component by showing that Awe had subjective knowledge of a risk of serious harm, and that he disregarded that risk by conduct that is more than gross negligence.  *See Goebert*, 510 F.3d at 1327.

Under the first prong of the subjective component, Awe argues that "the record as a whole does not demonstrate that [he] knew of . . . a

serious medical need[.]"  Doc. 60-1 at 20; *see also* doc. 79-1 at 10 (Awe points to his testimony that he first learned of Ross' missing dentures at the October 4, 2018 appointment).  Ross testified, however, that he and Awe discussed his dental symptoms "every time" they met after Ross lost the denture.  Doc. 60-20 at 8; *see also id.* at 11 (Ross notes that he spoke with Awe about the loss of his dentures "[e]very month").  This testimony is sufficient to create a factual dispute on the issue of whether  and when Awe knew of a risk of serious harm, and Awe is not entitled to summary judgment on that ground.  *See Goebert*, 510 F.3d at 1327.

Awe also argues that Ross has not satisfied the second and third prongs because, *inter alia*, he "provided reasonable care to address the symptoms Ross allegedly suffered as a result of the lack of dentures from May 2018 until November 2018."  Doc. 79-1 at 15.  He notes that he "continued to prescribe Ross Fentanyl for pain, prescribed Ross Ensure and an additional daily snack to help with any weight loss[ ], and prescribed him [the antibiotic] Augmentin in October of 2018 when [he] believed that Ross had an infection in his mouth."  Doc. 60-1 at 20.  "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally

reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1272 (11th Cir. 2020) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). However, "liability cannot be avoided simply by pointing out that *some* medical care was provided, however cursory or insufficient that care." *Baxter v. Adam*, 750 F. Supp. 2d 1313, 1335 (N.D. Fla. 2010) (emphasis in original). Accordingly, the Eleventh Circuit has explained that "medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989).

The Court cannot conclude, even viewing the record and all reasonable inferences that can be drawn from the record in the light most favorable to Ross, that there is a dispute of material fact that Awe's treatment was so "grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris*, 941 F.2d at 1505. Awe renewed Ross' Fentanyl prescription monthly during the period in which Ross testified he was experiencing pain from the missing denture. Doc. 79-2 at 4; doc. 83-2 at 5. He prescribed Ensure to treat Ross' weight loss. *See* doc. 60-10 at 80; *see also*

doc. 79-2 at 5; doc. 83-2 at 6.  Additionally, when Awe determined that Ross "can't take Ensure," he prescribed an additional snack in lieu of Ensure.  Doc. 79-2 at 7; doc. 83-2 at 8.  When Awe identified "acute gingivitis secondary to dentures," he prescribed an antibiotic, renewed the Fentanyl prescription, and told Ross to increase his dental hygiene and follow up with a dentist.  Doc. 79-2 at 8; doc. 83-2 at 10; *see also* doc. 60-20 at 12 (Ross testified that he told Awe "the antibiotic is working on the infection and cuts").  Further, Awe testified that he made a determination at the October 4, 2018 appointment that Ross only had an infection on his bottom gum, which is inconsistent with an infection caused by a missing top denture.  *See* doc. 60-10 at 93-94.

Ross argues that the treatment he received was "constitutionally inadequate."  Doc. 83 at 10.  First, he asserts that "there is nothing in the record showing that Defendant Awe prescribed Mr. Ross Fentanyl to address his dental pain, but rather . . . the Fentanyl was an ongoing prescription for . . . Ross's existing medical issues."  Doc. 67 at 17.  However, the record indicates that Awe prescribed Ross Fentanyl[6] during

---

[6]  *Cf. McElligott*, 182 F.3d at 1257 (defendants were deliberately indifferent when they gave prisoner Tylenol, Pepto-Bismol, and anti-gas medication despite prisoner's repeated complaints of severe abdominal pain).

the appointments at which Ross contends he told Awe about his dental pain, *see, e.g.*, doc. 79-2 at 4; doc. 83-2 at 5, and the Court cannot conclude that he "*purposefully ignore[d] or fail[ed] to respond* to [Ross'] pain[.]" *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1191 (11th Cir. 1994) (emphasis in original) (quotations and citation omitted), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002). Ross also points to his testimony that he was still experiencing dental pain despite the Fentanyl prescription, doc. 67 at 17 (citing doc. 60-20 at 24); however, a prisoner's dissatisfaction with the efficacy of pain medication is simply not sufficient to state a deliberate indifference claim. *See Baez v. Rogers*, 522 F. App'x 819, 820-21 (11th Cir. 2013) (affirming dismissal of deliberate indifference claim based on allegation that pain medication was inadequate because it "alleges only a difference of medical opinion as to what course of treatment was appropriate."); *Smith v. Wood*, 2019 WL 13068185, at *7 (N.D. Ga. Oct. 31, 2019) (collecting cases), adopted 2020 WL 11424888 (N.D. Ga. July 15, 2020); *see also Leiser v. Hoffmann,* 2021 WL 3028147, at *3 (7th Cir. July 19, 2021) ("[Plaintiff] argues that the conservative use of tramadol left him

in persistent pain.  But doctors are not deliberately indifferent when they are unable to eliminate completely a patient's pain.").

Next, Ross argues that Awe's prescription of Ensure and the "additional snack" were constitutionally insufficient.  Doc. 67 at 17-18; doc. 83 at 10.  He argues that prescribing these dietary supplements despite Ross' inability to tolerate Ensure and his difficulty chewing the additional snack "amounted to an outright *denial* of treatment—not merely a different 'method of treatment' with which . . . Ross disagreed." Doc. 67 at 18 n.6 (emphasis in original) (noting that Awe did not prescribe a mechanical soft diet, despite a CSP policy that "[p]atients waiting for prosthetics who have difficulty masticating their food may be offered a Mechanical Soft Diet.").  Ross' testimony, however, indicates that Ross' dissatisfaction with the prescribed dietary supplements *was* a disagreement with Awe's medical judgment:

> And I asked [Awe], . . . about a soft diet where they just grind my stuff up.  He didn't want to do that.  *He said the Ensure[ ] will be better.*  So I'm telling him . . . I can't hardly drink milk, but I drunk it.  . . . I drunk it until I just got where I started throwing it up and it started giving me diarrhea real bad, so then he took me off it.

Doc. 60-20 at 24-25 (emphasis added).  Ross also testified:

> And I said, the antibiotic is working on the infections and cuts,
> but what about [my] eating?  So . . . [Awe] ordered me Ensure
> and a bologna sandwich.  What am I going to [do] with a
> bologna sandwich when . . . I already can't chew the other
> stuff?  So I asked him, well, can you give me a soft diet . . .
> where they grind all your stuff up?  He denied that and gave
> me the bologna sandwich.

*Id.* at 12 (formatting altered).  Although Ross takes issue with Awe's

judgments that "Ensure[ ] will be better" and that he should have an

additional snack in lieu of the Ensure, *id.* at 12, 24-25, the Court is

"reluctant to second guess" those judgments and conclude that the care

provided was it "so grossly incompetent, inadequate, or excessive as to

shock the conscience or to be intolerable to fundamental fairness."

*Harris*, 941 F.2d at 1505, 1507; *see also Greene v. Bd. of Regents of Univ.*

*Sys. of Georgia*, 2022 WL 3036630, at *5 (S.D. Ga. Aug. 1, 2022) (Baker,

J.) (granting motion to dismiss deliberate indifferent claims against Awe

when "the Complaint does not allege that Dr. Awe refused to treat

Plaintiff or withheld treatment from him.").  Even if Awe "could have

committed malpractice" by failing to provide a mechanical soft diet, that

does not "rise beyond negligence to the level of a refusal to treat as outlined by *Estelle*." *Howell v. Evans*, 922 F.2d 712, 721 (11th Cir. 1991).[7]

Ross also argues that Awe's prescription of the antibiotic Augmentin was insufficient because "at most[, it] would treat a secondary issue that had arisen because of [his missing denture]." Doc. 67 at 18. Accordingly, Ross asserts that Awe "acted with deliberate indifference by failing to refer . . . Ross to a dentist who could help him." *Id.* (quoting *McElligot*, 182 F.3d at 1255 ("deliberate indifference may be established by a . . . decision to take an easier but less efficacious course of treatment")). "[A]lthough it is true that a doctor's decision to take an easier and less efficacious course of treatment may constitute deliberate indifference, mere medical malpractice[ ] does not constitute deliberate indifference." *Ireland v. Prummell*, 53 F.4th 1274, 1295 (11th Cir. 2022) (quotations and citations omitted). Therefore, "a doctor's failure to 'diligently pursue alternative means of treating' his patient's condition

---

[7] The Court is unpersuaded by Ross' reference to the CSP policy stating "[p]atients waiting for prosthetics who have difficulty masticating their food *may* be offered a Mechanical Soft Diet." Doc. 67 at 18 n.6 (emphasis added); *see, e.g., Hill v. Allen*, 2016 WL 1435685, at *3 (M.D. Ga. Apr. 11, 2016) (quoting *Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2013)) ("The 'failure to follow procedures does not, . . .by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence.' ").

will not automatically constitute deliberate indifference." *Ruiz v. Rummel*, 777 F. App'x 410, 415 (11th Cir. 2019) (quoting *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995)).

The Court is unpersuaded by Ross' argument given Awe's testimony regarding the appointment at which Ross received the antibiotic prescription:

> [Ross] pretty much has normal vital signs, he wasn't having any fever, he didn't have any jaw swelling. So, . . . this is a patient that could pretty much go to see the dentist.  . . . There's no . . . evidence that he has anything that is life-threatening right there . . . and even though . . . he's alleging that he has infection of his gum because of no denture, he actually has denture on . . . the same arch where he has infection in.  So the infection that he has at the point when I saw him here is not because he didn't have any denture[.]

Doc. 60-10 at 93-94; *see also id.* at 95 (testifying that he did not see any swelling, inflammation, or infection on Ross' upper gum).  This testimony indicates that Awe identified Ross' infection on the same arch as his existing denture (the bottom denture, which he did not lose), and concluded that a new top denture would not improve the condition. *See also id.* at 94-95 (Awe testifies that Ross had gingivitis on "the lower jaw . . . [which is] the same jaw that . . . he was wearing a denture [sic]."). The Court acknowledges Ross' testimony that he, *e.g.*, "had cuts in the

front of [his] gum where the denture is supposed to be in the front", doc.
60-20 at 24, and that the "top [gum] was just real . . . sore because [the]
gum . . . [had] nothing on it", *id.*  However, Awe's testimony regarding
the appointment indicates, at most, that Awe committed malpractice by
making a medical determination that the conditions in Ross' mouth
would not be improved by a new top denture.[8]  *See Greene*, 2022 WL
3036630, at *5 ("Dr. Awe's decision to treat Plaintiff with antibiotics
instead of referring him to a specialist is a classic example of a matter for
medical judgment and therefore not an appropriate basis for liability
under the Eighth Amendment." (quotations and citations omitted));
*Sherman v. Quest*, 2020 WL 6791100, at *26 (S.D. Fla. Nov. 19, 2020)

---

[8] To be clear, the Court construes Ross' testimony in the light most favorable to him,
as is required at summary judgment. *Peek-A-Boo Lounge of Bradenton, Inc.*, 630 F.3d
at 1353.  Accordingly, the Court is not resolving a factual dispute regarding the
location of Ross' dental conditions by crediting Awe's testimony over Ross' testimony.
Rather, assuming Ross' testimony regarding the location of his dental conditions is
accurate, the record indicates that Awe made a medical determination that dentures
would not improve Ross' dental condition.  Even if this determination was erroneous,
it "sound[s] in state tort law" as opposed to constitutional deliberate indifference.
*Westlake*, 537 F.2d at 860 n.5.

   In his supplemental brief, Ross points to his expert witness Dr. Jay Shulman's
testimony that ". . . Ross had a painful dental condition caused by inadequate
dentures which resulted in chewing difficulties, oral lesions, weight loss, and
difficulty sleeping, and that . . . Ross's painful chewing materially affected his diet."
Doc. 83 at 7.  At most, this testimony establishes that Awe made an *incorrect*
determination at the appointment, which is not sufficient to sustain a deliberate
indifference claim.  *See Simpson v. Holder*, 200 F. App'x 836, 839 (11th Cir. 2006)
("The facts alleged must do more than contend medical malpractice, misdiagnosis,
accidents, [or] poor exercise of medical judgment.").

(quoting *Hilton v. McHugh*, 178 F. App'x 866, 871 (11th Cir. 2006))
("[T]he Eleventh Circuit has held that a provider's refusal to refer a
patient to a specialist is 'not deliberate indifference, but a disagreement
over a course of treatment . . . [.]' ").

The Court is also unpersuaded by Ross' attempt to analogize this
case to *Farrow v. West*, where a plaintiff who did not obtain new dentures
until nearly fifteen months after a prison dentist prescribed them
defeated the dentist's summary judgment motion.  320 F.3d 1235, 1241
(11th Cir. 2003); *see, e.g.*, doc. 67 at 16, 23; doc. 83 at 10.  In *Farrow*, the
dentist was "aware that [the plaintiff], without dentures, likely would
continue to suffer from pain and bleeding and swollen gums and that [he]
could experience other serious health problems, such as weight loss and
malnutrition."  *Farrow*, 320 F.3d at 1246.  The court explained that
despite this awareness, the evidence would support a jury finding that
the dentist "purposefully refused to treat or see [the plaintiff] for a
considerable period of time after [they] had an argument . . . during [an
appointment] and [the dentist] told [the plaintiff] that he was 'sick of
being bother[ed] with [him].' "  *Id.* at 1247-48.  "Moreover, in *Farrow*, the
dentist deliberately avoided [the plaintiff] and instructed prison staff not

to allow him access to treatment." *Dipietro v. Barron*, 2021 WL 4480637, at *25 (M.D. Ga. July 22, 2021).  Here, Awe treated Ross' symptoms on a monthly basis before the new dentist arrived at CSP, and made a judgment that new dentures would not improve his mouth sores when he prescribed the antibiotic.  *See* doc. 60-10 at 93-94.  *Cf. Farrow*, 320 F.3d at 1247 (summary judgment for dentist is inappropriate given the "recognized need for denture treatment, the nature of his continuing problems, the sheer length of the delay involved, and the lack of any reasonable explanation for the inordinate delay").

Ross also analogizes this case to *Berry v. Peterman*, where the incarcerated plaintiff suffered severe dental pain, including "pulp in [a] tooth . . . that was clearly necrotic." 604 F.3d 435, 439-40 (7th Cir. 2010); *see* doc. 67 at 16-17.  Ross notes that in *Berry*, the "plaintiff complained to the prison doctor and 'insisted on seeing a dentist,' but the doctor 'refused to make a referral, apparently because [the plaintiff] presented with nothing more urgent than unexplained severe pain.' " Doc. 67 at 16 (quoting *Berry*, 604 F.3d at 439); *see also Berry*, 603 F.3d at 441 (noting that the dentist "simply concluded that [plaintiff] could endure his pain until his transfer back to the [Department of Corrections ("DOC")]

24

several weeks later, when [he] would be the DOC dentist's problem, not hers"). Plaintiff argues that here, "a reasonable jury could make the similar finding that . . . Awe simply forced . . . Ross to wait until CSP hired a new dentist rather than taking steps to refer him to another facility for timely treatment." Doc. 67 at 17.

Unlike in *Berry,* however, Awe did not merely "adhere[ ] to what [he] knew to be an ineffective treatment program without exploring even the obvious alternative of referring [Ross] for a routine dental examination." *Zirko v. Parthasarathi Ghosh, M.D.*, 2015 WL 6447768, at *12 (N.D. Ill. Oct. 26, 2015) (quotations omitted) (discussing *Berry*). Awe prescribed Fentanyl and dietary supplements. *See, e.g.*, doc. 79-2 at 4, 7; doc. 83-2 at 5, 8. Further, Awe testified that he made a determination that Plaintiff's oral symptoms were not caused by the missing top denture based on their location in his mouth at the appointment when he prescribed antibiotics. *See* doc. 60-10 at 93-94. Accordingly, the record does not indicate that Awe engaged in the " 'gratuitous cruelty' forbidden by the Eighth Amendment." *Berry*, 604 F.3d at 441 (quoting *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999)).

25

Finally, Ross argues that the care Awe provided was constitutionally insufficient because

> even after the new dentist, Dr. Gevirtz, arrived at CSP in November 2018, Mr. Ross was still not seen by him for treatment for over two more months. . . . Even if . . . Awe does not formally oversee dental care at CSP, surely he could have asked Dr. Gevirtz when he started on November 5, 2018 to prioritize Mr. Ross's dental treatment, but he did not. This is further evidence of Defendant Awe's failure to ensure that Mr. Ross received timely treatment for his serious medical issue.

Doc. 67 at 17.  However, the record indicates that Awe made a medical determination that new dentures would not improve Ross' dental condition.  Doc. 60-10 at 93-94.  To the extent Ross contends that Awe's determination or his failure to prompt Gevirtz to see Ross sooner constitutes negligence or malpractice, that is not sufficient to support a deliberate indifference claim.  *See Howell*, 922 F.2d at 721 ("We acknowledge that, from these facts, Mendoza could have committed malpractice. . . . He also may not have diligently pursued alternate treatment at another hospital and may not have prescribed further treatment soon enough.  Yet none of these allegations rise beyond negligence to the level of a refusal to treat as outlined by *Estelle*.").

26

"A prisoner bringing a deliberate-indifference claim has a steep hill to climb. . . . [T]he Constitution doesn't require that the medical care provided to prisoners be perfect, the best obtainable, or even very good." *Keohane v. Fla. Dept. of Corrs. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (internal quotations and citation omitted). The record in this case, even construed in Ross' favor, might support a jury's conclusion that Awe provided substandard or even negligent care. It could not support the conclusion that he was deliberately indifferent. Awe's Motion for Summary Judgment should, therefore, be **GRANTED**, in part, docs. 60 & 79, and Ross' deliberate indifference claim against Awe should therefore be **DISMISSED**.

## II.   *Ross' retaliation claim against Awe should be dismissed.*

As discussed, the undersigned recommended that Awe's motion for summary judgment on Ross' First Amendment retaliation claim against him should be dismissed, doc. 75 at 56-60; Ross objected to that recommendation. Doc. 77 at 8-10. Consistent with Ross' request, the District Judge deferred ruling on the retaliation claim against Awe pending the additional briefing on the deliberate indifference issue. Doc. 78 at 10-11. The undersigned does not find that the analysis in the

parties' supplemental briefing or this R&R alters its prior recommendation regarding the retaliation claim against Awe. Accordingly, for the reasons discussed in the prior R&R, doc. 75 at 56-60, the undersigned **RECOMMENDS** that Ross' retaliation claim against Awe be **DISMISSED**.

## CONCLUSION

For the foregoing reasons, Awe's Motion for Summary Judgment, doc. 60, as supplemented, doc. 79, should be **GRANTED** to the extent it seeks dismissal of Ross' deliberate indifference and retaliation claims against Awe.[9]  This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

---

[9]  Ross argues that Awe is not entitled to qualified immunity.  *See* doc. 60-1 at 25; doc. 79-1 at 17-18.  Given the Court's determination that the record does not support Ross' deliberate indifference or retaliation claims against Awe, the Court need not address his qualified immunity arguments.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 10th day of April, 2023.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA