**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

MILTON ROSS,

          Plaintiff,

    v.

DR. OLATUNJI AWE,

          Defendant.

CIVIL ACTION NO.: 4:19-cv-201

**O R D E R**

Plaintiff Milton Ross brought Eighth Amendment deliberate-indifference and First Amendment retaliation claims against Defendants Dr. Olatunji Awe and Cynthia Rivers. (Doc. 41, pp. 12-17 (Amended Complaint).)   Defendants moved to exclude testimony from Ross' expert Dr. Jay Shulman (the "Daubert Motion"), (doc. 61), and for summary judgment on all of Ross' claims, (doc. 60).   The Magistrate Judge granted the Daubert motion, in part, and denied it, in part.   (Doc. 75, p. 65.)   He recommended that Defendants' summary judgment request be granted as to Ross' retaliation claim against Awe, and his deliberate indifference and retaliation claims against Rivers.  (Id., pp. 65-66.)   Based on the partial grant of the Daubert motion, the Magistrate Judge deferred ruling on the summary judgment request as to Ross' deliberate indifference claims against Awe, and afforded the parties an opportunity to submit additional briefing on the issue.  (Id., p. 66.)   The Court subsequently adopted the Magistrate Judge's recommended dismissal of Ross' claims against Rivers, and deferred ruling on Ross' deliberate indifference and retaliation claims against Awe pending the parties' additional briefing on those two claims.   (Doc. 78, p. 12.)

Awe filed a Supplemental Motion for Summary Judgment, (doc. 79); Ross responded, (doc. 83), and Awe replied, (doc. 87).   On April 10, 2023 the Magistrate Judge recommended that the Court grant Awe's request for summary judgment on both of Ross' claims against him.   (Doc. 88).   Ross objected to that recommendation.   (Doc. 91).   After a careful de novo review of the entire record, Ross' objections are **OVERRULED**, (doc. 91), the R&R is **ADOPTED** as the opinion of the Court, (doc. 88), and Awe's Motion for Summary Judgment, (doc. 60), as supplemented, (doc. 79), is **GRANTED**.

## BACKGROUND

As the Court explained in a prior Order, Ross accidentally flushed his top denture down a toilet while incarcerated at Coastal State Prison ("CSP") in May 2018.   (Doc. 78, p. 2.)   He did not receive a replacement denture until approximately 16 months later.   (Id.)   He testified that he suffered cuts and blisters on his gum, difficulty chewing, weight loss, and difficulty sleeping as a result of the missing denture.   (Id.)   He alleges that Awe, CSP's medical director, was deliberately indifferent by failing to facilitate his access to replacement dentures.   (Doc. 41, p. 13.)   He also alleges that Awe refused to facilitate his access to dentures as retaliation because he filed a prior unrelated lawsuit against another CSP official.   (Id., pp. 15-16.)

Awe met with Ross monthly to renew Ross' Fentanyl prescription to treat his chronic back and leg pain.   (Doc. 78, p. 2.)   Ross testified that he told Awe about the denture loss and resulting symptoms "every time" he met with Awe, including during an appointment within several days of losing the denture.   (Id.)   By contrast, Awe maintains that he did not learn of the missing denture until Ross' October 4, 2018 appointment.   (Id.)   The Medical Encounter Form Awe generated from that appointment indicates that Ross complained to Awe about pain and swelling in his gum. (Id., pp. 2-3.)   Awe diagnosed Ross with chronic low back and leg pain with spasm and acute

gingivitis "secondary to dentures" at the appointment.   (Id., p. 3.)   Awe testified that he renewed

Ross' Fentanyl patch, prescribed an antibiotic, and told Ross to increase his dental hygiene and

follow up with a dentist.   (Id.)   Awe also testified that the infection he saw in Ross' mouth at the

October 4, 2018 appointment was not caused by the missing denture.   (Doc. 60-2, p. 11; doc. 67-

7, p.14; doc. 60-10, pp. 93-94 ("[E]ven though [Ross is] alleging that he has infection of his gum

because of no denture, he actually has denture . . . on the same arch where he has infection in.   So

the infection that he has at the point when I saw him [on October 4, 2018] is not because he didn't

have any denture[.]" [sic]).)

The parties do not dispute certain aspects of Ross' appointments with Awe, including Ross'

recorded weight at the appointments.   The Magistrate Judge summarized Ross' weight

fluctuations as follows:

> . . . CSP staff recorded Ross' weight at each appointment, which progressively
> decreased from 141 pounds on May 1,  2018, to 133 or 135 pounds on July 23,
> 2018.[ ] Ross' weight fluctuated between 138 and 139 pounds at his July 31, August
> 20, and September 13, 2018 appointments.   [Cits.]   His weight fluctuated between
> 141 and 143 pounds at his October 4, 2018 appointment, his three appointments in
> November 2018, and his appointments in December 2018 and January 2019.[ ]

(Doc. 88, pp. 3-4.)   The parties also agree that Awe renewed Ross' Fentanyl prescription on

approximate 30-day intervals, and that he prescribed Ensure, a liquid dietary supplement, at their

May 29, 2018 appointment.   (Id., p. 4; see also doc. 60-10 at 80 (Awe testified that although he

does not specifically recall why he prescribed Ensure, Ross' "weight drop might have been the

reason why [he] wrote the Ensure [prescription] for [Ross] at that time.").)   At the July 31, 2018

appointment, Awe noted that Ross' weight was "stable", though he was underweight.   (Doc. 88,

p. 4-5.)   He also noted that Ross "can't take Ensure", and prescribed an "additional snack" instead.

(Id., p. 5.)

CSP contracted with a company to provide dental services to its inmates.   (Doc. 78, p. 3.) The company did not have an in-house dentist assigned to CSP from "early 2018" until November 2018, when Dr. David Gevirtz began working at the prison.   (Id.)   Gevirtz met with Ross for the first time on January 10, 2019.   (Id.)   Gevirtz identified a "denture sore spot" on Ross' lower arch, "just from the lower denture rubbing his gum."   (Id.)   He testified that "[w]hat was bothering [Ross] was that he had a sore spot from the lower denture from the . . . flange or the edge of the lower denture just rubbing into the gum."   (Id.)   He filed down the length of the flange that was rubbing against Ross' lower gum at the appointment.   (Id.)   Gevirtz testified that this procedure "took away all the inflammation."   (Id.)   Ross testifies that "when [Gevirtz] filed [it] down it got [worse]."   (Id.)   Ross received new upper and lower dentures from Gevirtz on October 3, 2019.   (Id.)

Ross alleges that Awe's insufficient treatment is retaliation for Ross' prior unrelated litigation against another prison official.   (See doc. 41, p. 15.)   There is no dispute that during the relevant time, Awe was aware that Ross filed the prior lawsuit.   (Doc. 60-4, pp. 8-9 (Awe Declaration).)   Awe, however, asserts that his knowledge of the lawsuit did not impact the treatment he provided to Ross.   (Id.)   Ross testified that Awe told him:

> "I [Awe] done got you [Ross] some antibiotic for your mouth.   So I know you fixing to go do whatever you're going to do.   You're fixing to write some grievance up on me or file a lawsuit."   [Awe] said, "it ain't going nowhere."   He said, "go do what you're going to do."   So I [Ross] said . . . "I'm going to take it all the way to the courthouse."   And that's how I went.

(Doc. 60-20, p. 22.)

4

## ANALYSIS

The Court incorporates the Magistrate Judge's recitation of the summary judgment standard by reference.   (Doc. 88, pp. 9-11.)

### I.   Ross' Deliberate Indifference Claim

The Eighth Amendment's prohibition of cruel and unusual punishment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care[.]" Farmer v. Brennan, 511 U.S. 825, 832 (1994).   In the medical care context, the standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate.   Farmer, 511 U.S. at 835.   However, "not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' " Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, an inmate "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."   Estelle, 429 U.S. at 106.

In order to prove a deliberate indifference to a serious medical need claim, a prisoner must: (1) "satisfy the objective component by showing that [he] had a serious medical need"; (2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and (3) "show that the injury was caused by the defendant's wrongful conduct."   Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).   As to the first component, a medical need is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."   Id. (quoting Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).   Under the second, subjective component, the Eleventh Circuit

Court of Appeals has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Thus, the subjective component requires an inmate to prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016) (abrogated on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), as recognized in Campoverde-Panora v. U.S. Att'y Gen., 2021 WL 5414940, at *2 (11th Cir. Nov. 19, 2021)). "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011). However, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment does not support a claim of deliberate indifference." Melton, 841 F.3d at 1224 (quotations omitted); see also Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985). In other words, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

Courts have recognized that under the objective component, "[a]n inmate's lack of teeth is not itself a serious medical need, but the complications from a lack of teeth in a particular case may present serious medical needs to which a prison official must respond." Cullor v. Baldwin, 2014 WL 12691612, at *9 (S.D. Iowa July 31, 2014) (citing Farrow v. West, 320 F.3d 1235, 1243-44 (11th Cir. 2003)). The Magistrate Judge concluded that a jury could find that Ross suffered from a serious medical need based on his testimony that "without his denture, he experienced pain and blistering in his mouth, infection, chewing difficulty, difficulty sleeping, and weight loss." (Doc. 88, p. 13 (citing doc. 75, p. 44)); see Newsome v. Prison Health Servs., Inc., 2009 WL

1469203, at *5 (S.D. Ga. May 26, 2009) ("It is universally recognized that a dental problem of whatever nature that results in significant pain qualifies as a serious medical need.").   Further, under the subjective prong, the Magistrate Judge found that Ross' testimony that he told Awe about his missing denture and resulting symptoms "every time" they met is sufficient to create a factual dispute on the issue of whether and when Awe knew of a risk of serious harm.   (Doc. 88, p. 14 (citing doc. 60-20, pp. 8, 11).)   No party objected to either conclusion, (see generally docket), and the Court agrees with both.   Accordingly, the only remaining issue as to the deliberate indifference claim against Awe is whether Awe disregarded a risk of serious harm to Ross by conduct that is more than mere negligence.   See Melton, 841 F.3d at 1223.

The Magistrate Judge concluded that, given the treatment Awe provided, there was no dispute of material fact as to the final element of Ross' deliberate indifference claim:

> Awe renewed Ross' Fentanyl prescription monthly during the period in which Ross testified he was experiencing pain from the missing denture.   [Cits.]   He prescribed Ensure to treat Ross' weight loss.   [Cits.]   Additionally, when Awe determined that Ross "can't take Ensure," he prescribed an additional snack in lieu of Ensure.   [Cits.]   When Awe identified "acute gingivitis secondary to dentures," he prescribed an antibiotic, renewed the Fentanyl prescription, and told Ross to increase his dental hygiene and follow up with a dentist.   [Cits.]   Further, Awe testified that he made a determination at the October 4, 2018 appointment that Ross only had an infection on his bottom gum, which is inconsistent with an infection caused by a missing top denture.   [Cit.]

(Doc. 88, pp. 15-16.)   Ross asserts four arguments in his objection.   First, he contends that the treatment discussed by the Magistrate Judge was so "cursory as to amount to no treatment at all." (Doc. 91, p. 6 (quoting Mandel v. Doe, 888 F.2d 783, 789 (11th Cir. 1989).)   Second, he contends that the Magistrate Judge "improperly weighed evidence in . . . Awe's favor and . . . relied on conclusions that are not supported by the record in this case."   (Id., p. 12.)   Third, he argues that the Magistrate Judge erred in distinguishing this case from Farrow, 320 F.3d 1235, and Berry v. Peterman, 604 F.3d 435 (7th Cir. 2010).   (Doc. 91, p. 11.)   Finally, he argues that there is a factual

dispute as to whether Awe was deliberately indifferent because the record indicates that he did not intend the treatment to target symptoms specifically caused by the missing denture.  (See, e.g., id., p. 7.)[1]  The Court will address these arguments in turn.

    A.  *The adequacy of the treatment Awe provided to Ross.*

Ross objects to the Magistrate Judge's conclusion that there is no genuine dispute of material fact regarding Awe's deliberate indifference because Awe provided treatment for Ross' symptoms.  (See, e.g., doc. 91, p. 12.)  He contends that the treatment Awe provided was so "cursory as to amount to no treatment at all."  (Id., p. 6 (quoting Mandel, 888 F.2d at 789).)  He asserts that, "[a]t best, the record shows that . . . Awe provided some ineffective and cursory treatment for a few of [the] symptoms, while completely ignoring what . . . Ross really needed: replacement dentures."  (Id., pp. 7-8.)  Several courts, however, have suggested that prison medical staff are not necessarily deliberately indifferent by providing treatment for symptoms caused by missing dentures instead of facilitating access to replacement dentures.  For example, in Hoeft v. Sears, 2010 WL 785989, at *5 (W.D. Wis. Mar. 4, 2010), the court granted a prison nurse's motion for summary judgment on a prisoner's deliberate indifferent claim when the prisoner lost his dentures in March 2007, and had not received new dentures by the time he was released in February 2009.  Id. at *3.  The court explained:

---

[1]  Although Ross raised arguments related to Awe's intention in his initial summary judgment briefing (see, e.g., doc. 67, p. 17 ("[T]here is nothing in the record showing that Defendant Awe prescribed Mr. Ross Fentanyl to address his dental pain[.]")), and the Magistrate Judge briefly addressed the issue in his R&R, (see, e.g., doc. 88, pp. 16-17), Ross makes this argument more explicit in his objection.  (See, e.g., doc. 91, p. 12 (arguing that Awe's treatment was not "even intended to address [Ross'] missing dentures").)

> Plaintiff has produced no evidence from which a reasonable jury could find that defendant's treatment of plaintiff's dental needs rose to the level of deliberate indifference.   Although plaintiff never received partial dentures, he received many other forms of treatment.   Plaintiff had cavities filled, teeth extracted and a root canal and received pain medication for his dental problems.   None of the undisputed facts support the conclusion that only immediate receipt of partial dentures would have reduced plaintiff's dental problems, including his tooth pain.[2] Although plaintiff may disagree with defendant's decision to treat plaintiff's tooth decay problems before addressing any need for partial dentures, such a disagreement does not rise to the level of deliberate indifference.

Id. at *5.   Similarly, in Whitely v. Russo, 2006 WL 2434445, at *4 (S.D. Tex. Aug. 21, 2006), the court granted a motion for summary judgment on a prisoner's deliberate indifference claim when he did not have dentures from May 2002 through June 2004, and alleged that he "had no teeth[,] . . .was unable to eat[,] . . . lost a substantial amount of weight[,] and experienced stomach pains and physical pain and distress from sore gums."   Id. at *2.   In that case, the "evidence show[ed] that Plaintiff was evaluated for dentures and was included in [a] group of inmates who would be issued dentures when they became available.   Accommodations [including slow-eating passes and soft or pureed foods] were made at the prison, at the request of his treating physicians and dentists, to alleviate his dentition problem until he received dentures."   Id. at *4.[3]   Accordingly,

---

[2]   In his objections, Ross points to the report of his expert Dr. Jay Shulman, a dentist with experience in prison dental care, which states that "Ross' mouth infection on [the day of the appointment when Awe prescribed an antibiotic] . . . would persist until the denture was adjusted or replaced."   (Doc. 91 at 9 (quoting doc. 61-2, p. 11, in part).)   This is not evidence that "only immediate receipt of . . . [a] denture[ ] would have reduced [Ross'] dental problems", Hoeft, 2010 WL 785989, at *5; rather, it is simply evidence that Ross' infection would persist to some extent until he received new dentures.   As discussed above, Awe provided multiple forms of treatment for various symptoms, including an oral infection, and Ross' own testimony indicates that some of the treatment reduced his symptoms.   (See, e.g., doc. 60-20, pp. 24 ("And I said, the antibiotic is working on the infections and cuts, but what about [my] eating?").)

[3]   Cf. Williams v. Wexford Health Sources, Inc., 2021 WL 3722799, at *8 (S.D. Ill. Aug. 23, 2021) ("[T]here is no evidence from which a jury could find that Dr. Aldridge's decision . . . not to replace . . . Plaintiff's upper denture immediately reflected deliberate indifference. . . . [T]here was a delay of approximately twenty-seven months between the time that Plaintiff was put on the waiting list for dentures . . . and when he was called up . . . to begin the denture fabrication process.   During this time, Plaintiff repeatedly complained about severe pain, bleeding gums, and difficulty eating.   But Dr. Aldridge did not provide Plaintiff with *any type of palliative care, such as pain reliever, numbing gel, a permit for ice, or a soft food diet.*" (emphasis added)); Riis v. Newbold, 2016 WL 7188157, at *3 (S.D. Ill. Dec. 12, 2016)

since the record indicates that Awe treated the symptoms which Ross complained were related to his missing denture, the Court cannot conclude that a reasonable jury could find that Awe was deliberately indifferent to Ross' symptoms.

Ross also argues that Awe was deliberately indifferent because the Fentanyl prescription did not eliminate Ross' oral pain.   (See, e.g., doc. 91, p. 8 (" . . . Ross was still experiencing pain caused by his dental condition *even though he was taking Fentanyl*, and he communicated this to Defendant Awe." (emphasis in original).)   As the Magistrate Judge explained, however, "a prisoner's dissatisfaction with the efficacy of pain medication is simply not sufficient to state a deliberate indifference claim."   (Doc. 88, pp. 17-18 (citing, e.g., Leiser v. Hoffmann, 2021 WL 3028147, at *3 (7th Cir. July 19, 2021) ("[Plaintiff] argues that the conservative use of tramadol left him in persistent pain.   But doctors are not deliberately indifferent when they are unable to eliminate completely a patient's pain.")).)   Ross also asserts that Awe's decisions to treat his weight loss with Ensure and an additional snack were erroneous.   (See, e.g., doc. 91, p. 4 ("During the 16-month period where Mr. Ross did not have dentures, Defendant Awe prescribed an additional snack (a bologna sandwich) for Mr. Ross, as well as Ensure, in response to Mr. Ross's weight loss, but Mr. Ross was not able to chew the snack or tolerate the Ensure."); id., p. 9 (" . . . Ross was not able to tolerate the Ensure or eat the bologna sandwich—a fact that Defendant Awe was aware of, . . . so this (like the Fentanyl) amounted to no treatment at all for Mr. Ross's serious dental condition." (citation omitted)).)   As the Magistrate Judge noted, (doc. 88, pp. 18-19),

("While there is some suggestion in [Plaintiff's] Complaint that the failure to provide dentures was not punitive, but instead based on the availability of dentures at [the prison], Riis still alleges that he was not given dental care, either in the form of dentures *or an ameliorative soft diet or pain medications*.   That is sufficient to state a claim against [the prison doctors]." (emphasis added)); see also Garner v. Burrell, 2020 WL 7353088, at *3 (S.D. Ill. Dec. 15, 2020) ("It is not clear from the Complaint, however, whether [Defendant's] conduct could be considered deliberate indifference.   If he was aware of Plaintiff's dental pain and inability to eat normally [due to his broken dentures], *yet failed to take steps to alleviate those problems*, he could be found to have violated Plaintiff's Eighth Amendment rights." (emphasis added)).

however, Ross' own testimony indicates that Awe did not withhold treatment for Ross' weight

loss:

> And I asked [Awe], . . . about a soft diet where they just grind my stuff up. He didn't want to do that.  *He said the Ensure[ ] will be better.*  So I'm telling him . . . I can't hardly drink milk, but I drunk it. . . . I drunk it until I just got where I started throwing it up and it started giving me diarrhea real bad, so then he took me off it.

(Doc. 88, p. 18 (quoting (doc. 60-20, pp. 24-25) (emphasis added by Magistrate Judge)); <u>see also</u>

<u>id.</u>, pp. 3-4 (The Magistrate Judge's summary of Ross' weight fluctuations shows a gradual weight

increase during the period when Ross received dietary supplements).)  Ross' testimony about

Awe's judgment to provide an extra snack instead of Ensure also indicates, at most, that Awe

committed malpractice:

> And I said, the antibiotic is working on the infections and cuts, but what about [my] eating?  So . . . [Awe] ordered me Ensure and a bologna sandwich.  What am I going to [do] with a bologna sandwich when . . . I already can't chew the other stuff?  So I asked him, well, can you give me a soft diet . . . where they grind all your stuff up?   He denied that and gave me the bologna sandwich.

(Doc. 88, p. 19 (quoting doc. 60-20, p. 12 (formatting altered by Magistrate Judge)).) [4]

Accordingly, Awe's objection based on the sufficiency of Awe's treatment is **OVERRULED**.

---

[4]   The Magistrate Judge concluded that Awe's failure to provide Ross a mechanical soft diet despite CSP's policy that "[p]atients waiting for prosthetics who have difficulty masticating their food may be offered a Mechanical Soft Diet" does not indicate that Awe was deliberately indifferent to Ross' serious medical needs.   (Doc. 88, p. 20 n.7 (quoting doc. 67, p. 18 n.6).)   Ross objects, contending that "the evidence here shows that . . . Ross *specifically requested* a mechanical soft diet and . . . Awe refused—despite the fact that such a diet could have helped with . . . Ross's symptoms[.]"   (Doc. 91, p. 9 n.1 (emphasis in original).) However, "[t]he fact that [Ross] was not provided with his preferred treatment out of a range of options does not establish that [Awe] acted with deliberate indifference."   <u>Muhammad v. Jones</u>, 2022 WL 17958940, at *2 (11th Cir. Dec. 27, 2022); <u>see also</u> <u>Hamm</u>, 774 F.2d at 1575 ("Although [the plaintiff] may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference.").

B. *The Magistrate Judge's weighing of the evidence.*

Ross argues that the Magistrate Judge improperly credited Awe's testimony over Ross'
testimony.   (See, e.g., doc. 91, p. 7.)   He cites the Magistrate Judge's characterization of Awe's
testimony that Awe "made a determination at the October 4, 2018 appointment that Ross only had
an infection on his bottom gum, which is inconsistent with an infection caused by a missing top
denture."  (Doc. 91, p. 9 (quoting doc. 88, p. 16, in part).)   He points to, *inter alia*, Shulman's
testimony that the infection was "only a manifestation of the underlying problem—a poorly fitted
denture that was traumatizing Mr. Ross's oral tissue" and that the "problem would persist until the
denture was adjusted or replaced[.]"   (Doc. 91, p. 9 (quoting doc. 61-2, p. 10).)   Regardless of
Awe's impression of the oral infection's precise cause, or the characterization of his decision-
making as a "determination," there is no dispute that Awe prescribed Augmentin and Fentanyl
after Ross contends that he notified Awe of cuts in his mouth.   (See doc. 79-2, p. 8; doc. 83-2, p.
10.)   Ross' contention that Awe was deliberately indifferent to his oral infection despite these
prescriptions is particularly unconvincing in light of his own testimony that "the antibiotic [was]
working on the infection and cuts[.]"   (Doc. 60-20, p. 12.)

Ross also objects to the Magistrate Judge's characterization of Awe's treatment decisions
as "medical judgments."   (See doc. 91, p. 10 (quoting doc. 88, p. 21 ("This testimony indicates
that Awe . . . concluded that a new top denture would not improve the condition."), p. 24 ("Awe
. . . made a judgment that new dentures would not improve his mouth sores when he prescribed
the antibiotic.", p. 22 n.8 ("[T]he record indicates that Awe made a medical determination that
dentures would not improve Ross' dental condition.").)   Ross argues that "it is simply not
evidence that Awe never made the ultimate conclusion that replacement dentures would not
address . . . Ross's serious dental condition. . . .   To the contrary, and in apparent recognition of

. . . Ross's need for dentures, . . . Awe repeatedly told . . . Ross to see a dentist."   (Id., pp. 10-11.)

Again, regardless of the characterization of Awe's exercise of judgment before providing treatment

to Ross, a reasonable jury could not conclude that Awe was deliberately indifferent given the

previously-discussed treatment he provided.   Ross' objection based on the Magistrate Judge's

weighing of the evidence is **OVERRULED**.

### C.   *The Magistrate Judge's distinction of Ross' case from* Farrow *and* Berry*.*

Ross also argues that the Magistrate Judge erred in distinguishing this case from Farrow,

320 F.3d 1235, and Berry, 604 F.3d 435.   (Doc. 91, p. 11.)   In Farrow, a prisoner plaintiff did not

receive new dentures until almost fifteen months after a prison dentist prescribed them.   320 F.3d

at 1241.   During that period, the plaintiff experienced, among other symptoms, "pain, continual

bleeding and swollen gums, two remaining teeth slicing into gums, [and] weight loss[.]"   Id. at

1244-45 (holding that these symptoms establish a serious medical need).   The Eleventh Circuit

held that a jury could find that the dentist was deliberately indifferent when the dentist

"purposefully refused to treat or see [the plaintiff] for a considerable period of time after [they]

had an argument . . . during [an appointment] and [the dentist] told [the plaintiff] that he was 'sick

of being bother[ed] with [him].' "   Id. at 1247-48; see also id. at 1246 ("[A]fter completing step

two in the denture construction process—the wax bite—in November 1999, [the dentist] provided

no dental care to [plaintiff] until July 2000 and did not complete the third step—the wax try-in—

until October 31, 2000, almost one year after taking the wax bite.").   In Berry, a prisoner plaintiff

"suffered from tooth decay and serious pain while at the . . . Jail—his tooth's pulp was clearly

necrotic, . . . requiring an immediate root canal when [he] was finally seen by a dentist[.]"   604

F.3d at 440 (quotations omitted).   The court found that a prison doctor was deliberately indifferent

to the plaintiff's conditions when she "refused to make a referral, apparently because [the plaintiff]

presented with nothing more urgent than unexplained severe pain.   Instead, she recommended a different pain medication.   [She] persisted in this course of treatment even after [the plaintiff] complained that those medications were ineffective.   She never contacted a dentist to examine [the plaintiff's] teeth."   Id. at 439; see also id. at 441 ("A jury could find that she simply concluded that [the plaintiff] could endure his pain until his transfer back to the DOC several weeks later, when [he] would be the DOC dentist's problem, not hers.").

> Ross argues:
>
> [T]he R&R's primary basis for distinguishing [Farrow] and [Berry] lacks merit. The R&R concluded that the facts of this case were distinguishable from both Farrow and Berry because . . . Awe "made a judgment that new dentures would not improve his mouth sores" and "made a determination that Plaintiff's oral symptoms were not caused by the missing top denture."   [Cit.]   But . . . Awe never made such a determination, as explained above, and Farrow and Berry are otherwise directly on point.   See Farrow, 320 F.3d at 1244-45 (holding that the plaintiff's constitutional rights were violated where he experienced "pain, continual bleeding and swollen gums, two remaining teeth slicing into gums, [and] weight loss" during the months when he was without dentures) and Berry, 604 F.3d at 439-441 (reversing summary judgment for defendant where plaintiff suffered from a dental problem at a prison with no in-house dentist and where the doctor refused to make a referral after concluding that the plaintiff could endure his pain until he was able to be treated by a dentist).

(Doc. 91, p. 11 (citations omitted) (formatting altered).)   As discussed above, regardless of the accuracy of characterizing Awe's actions as "determinations", the undisputed record still shows that Awe prescribed treatment for the symptoms which Ross maintains were caused by the missing dentures.

Further, the Court agrees with the Magistrate Judge that this case is distinguishable from both Farrow and Berry.   (See doc. 88, pp. 23-25.)   Unlike in Farrow, there is no evidence that Awe "deliberately avoided [Ross] and instructed prison staff not to allow him access to treatment." Dipietro v. Barron, 2021 WL 4480637, at *25 (M.D. Ga. July 22, 2021) (discussing Farrow). Ross argues that this case is analogous to Berry by noting that "the doctor refused to make a referral

after concluding that the plaintiff could endure his pain until he was able to be treated by a dentist[.]"   (Doc. 91, p. 11; see also doc. 67, p. 17 ("Here, a reasonable jury could make the similar finding that Defendant Awe simply forced Mr. Ross to wait until CSP hired a new dentist rather than taking steps to refer him to another facility for timely treatment.").)   In Berry, however, the doctor "had not identified an effective pain medication." 604 F.3d at 441.   Here, Ross' own testimony indicates that he told Awe that "the antibiotic is working on the infections and cuts[.]" (Doc. 60-20, p. 12.)   Ross cites several portions of his testimony indicating that he continued to experience pain despite the Fentanyl treatment, (doc. 91, p. 8); however, the cited testimony merely indicates that Ross continued to experience some pain despite the Fentanyl prescription, not that it was wholly ineffective.[5]   Additionally, in Berry, the defendant merely "persisted in [prescribing pain medications] even after [the plaintiff] complained that those medications were ineffective", 604 F.3d at 439; here, as discussed, Awe prescribed Fentanyl, an antibiotic, and dietary supplements.   Accordingly, Ross' objection based on the Magistrate Judge's distinction from Farrow and Berry is **OVERRULED**.

   D. *Ross' objection regarding Awe's intention*.

   Ross argues that the record indicates that "[Awe] had no intention of providing any treatment for . . . Ross's dental condition", *i.e.*, pain and blistering in Ross' mouth, infection,

---

[5]   (See doc. 91, p. 8 (citing doc. 60-20, p. 11 ("Q.   So how many times did you speak with Dr. Awe about the loss of your dentures?   A.   Every month.   I had to see him every 30 days."); id. (" . . . I take my bottom dentures out and I show him my mouth, how it was cut up and stuff, and the blisters.   And I tell him about [how] my jaws had started hurting.   I tell him I'm up all night because I can't sleep.   I feel like a big earache and all kind of mess."); id., p. 24 ("Q.   So Mr. Ross, can you describe for me in detail the injuries that you suffered from lack of dentures from May of 2018 to October 2019?   A.   . . . I had cuts in the front of my gum where the denture is supposed to be in the front.   Then I had them on the back part where my tongue at all the way around.   Most of it was right down in here.   And then I had blisters start cutting on my other side with my gum on this side.   Then I started having—it seemed like I was getting earaches but . . . Awe said it really was . . . my jawbone because I'm having to bite down so much.   And when I tried to chew on it I didn't have nothing to chew because I didn't have nothing on the top.")).)

chewing difficulty, difficulty sleeping, and weight loss resulting from the missing denture.   (Doc. 91, p. 7.)   However, viewing the record and all reasonable inferences that can be drawn from the record in a light most favorable to Ross, <u>see</u> <u>Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., Fla.</u>, 630 F.3d 1346, 1353 (11th Cir. 2011), Awe provided treatment for Ross' symptoms which Ross asserts were caused by the missing denture, even though the record indicates that Ross did not have the missing denture in mind during the treatment.   <u>See</u> <u>Hoffer v. Sec'y, Fla. Dep't of Corr.</u>, 973 F.3d 1263, 1272 (11th Cir. 2020) ("[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.").   It is undisputed that Awe prescribed Ensure at the May 29, 2018 appointment after observing Ross' weight loss.   (Doc. 79-2, p. 5; doc. 83-2, p. 6.; <u>see also</u> doc. 60-10, p. 80 (Awe testified that Ross' "weight drop might have been the reason why [he] wrote the Ensure for [Ross] at that time.").)   According to Ross' own testimony, when Ross requested a "soft diet" instead of Ensure, Awe explained that "Ensure[ ] will be better."   (Doc. 60-20, p. 24.)   When Awe determined that Ross "can't take Ensure", he prescribed an additional snack instead.   (Doc. 79-2, p. 7; doc. 83-2, p. 8.)   Additionally, the record shows that at the appointments where, according to Ross, he told Awe about the pain resulting from the missing denture, Awe prescribed Fentanyl, a potent opioid painkiller.   (<u>See, e.g.</u>, doc. 79-2, p. 4; doc. 83-2, p. 5; <u>see also</u> <u>Johnson v. Whitman</u>, 2015 WL 3385153, at *1, *1 n.3 (N.D. Ala. May 26, 2015) ("[Plaintiff] Johnson indicated that he experienced pain when trying to move the wrist, and [nurse] Thompson prescribed naproxen and acetaminophen for pain. . . .   Johnson argues that this pain medication was in fact prescribed for another, unrelated condition.   However, the facts as pled indicate that Johnson was prescribed pain medication following a medical exam during which Johnson complained about pain in his

wrist.").)   The parties also agree that Awe prescribed the antibiotic Augmentin to treat an infection in Ross' mouth, (doc. 79-2, p. 8; doc. 83-2, p. 10), though Awe's testimony indicates that he intended the Augmentin to treat an oral infection other than an infection cause by the missing denture.   (See doc. 60-10, pp. 93-94.)   Accordingly, the Court is unconvinced by Ross' contention that Awe was deliberately indifferent because he did not intend the treatment to target symptoms specifically caused by the missing denture.   Since the Magistrate Judge did not include a detailed discussion of the issue of Awe's intention underlying the treatment in his April 10, 2023 R&R, the Court modifies the Magistrate Judge's findings to explicitly reject Ross' arguments about Awe's intention.   See 28 U.S.C. § 636(b)(1)(C) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.").   For the foregoing reasons, Ross' objection based on Awe's intention when providing the treatment is **OVERRULED**, the Magistrate Judge's recommendations are **ADOPTED**, in part, as modified, and Ross' deliberate indifference claim against Awe is **DISMISSED**.

## II.    Ross' Retaliation Claim

"The First Amendment forbids prison officials from retaliating against prisoners for exercising their right of free speech."   Farrow, 320 F.3d at 1248; Thomas v. Evans, 880 F.2d 1235, 1242 (11th Cir. 1989) ("The gist of a retaliation claim is that a prisoner is penalized for exercising a right of free speech.").   It is well-established that "[p]rison officials may not retaliate against inmates for filing lawsuits or administrative grievances."   Williams v. Brown, 347 F. App'x 429, 435 (11th Cir. 2009) (citations omitted).   "To establish a First Amendment retaliation claim, a prisoner need not allege the violation of an additional separate and distinct constitutional right; instead, the core of the claim is that the prisoner is being retaliated against for exercising his right to free speech."   O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011).   "To prevail, the

inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).   Under the third element, "[t]he subjective motivation issue is resolved by most courts under the burden-shifting formula set forth in Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).   This formula requires that the plaintiff first meet his burden of establishing that his protected conduct was a motivating factor behind any harm and then the burden of production shifts to the defendant.   If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment."   West v. Gavins, 2010 WL 3168424, at *12 (M.D. Ala. May 12, 2010) (quotations and citations omitted).

As discussed above, Ross alleges that Awe failed to facilitate his access to a replacement denture because Ross filed a prior unrelated lawsuit against another CSP official.   (Doc. 41, pp. 15-17.)   Awe argues that the Court should grant his summary judgment request on Ross' retaliation claim under the third element alone, since there is no evidence of "causation between the previous lawsuit and [Awe's] alleged conduct in this case."   (See doc. 60-1, pp. 24-25.)   The Magistrate Judge agreed with Awe, explaining that although there is no dispute that Awe knew about the prior lawsuit during the time when Ross was missing his denture, the causal connection between Awe's alleged actions and the prior lawsuit is "no more than speculative."   (Doc. 75, p. 60.)

In his objection, Ross utilizes a comparison to Title VII discrimination cases to argue that

summary judgment is inappropriate on his retaliation claim.   (Doc. 91, p. 14.)   He cites Johnson v. Miami-Dade Cty., 948 F.3d 1318, 1325-26 (11th Cir. 2020), where the Eleventh Circuit explained that "[i]n a Title VII retaliation case, a plaintiff can attempt to establish that his employer's proffered reason for its employment decision was a pretext for unlawful activity by showing that the employer treated similarly situated employees differently—i.e., by showing that valid 'comparators' were treated differently than the plaintiff."   (Doc. 91, p. 14.)   He points out that other inmates at the prison were referred for dental care by Awe during the time when Ross was missing his denture.   (Id., p. 14.)   He also attached a list of inmates referred for dental care during the relevant time as an exhibit to his summary judgment response.   (Doc. 67-11; see also id., pp. 8-9 (The list indicates that Awe "requested" many of the referrals.).)

The Sixth Circuit has recognized that, in the First Amendment retaliation context, "because of the difficulty in producing direct evidence of an official's retaliatory motive, circumstantial evidence can suffice.   [Cit.]   This circumstantial evidence can include the disparate treatment of similarly situated individuals[.]"   Hill v. Lappin, 630 F.3d 468, 475 (6th Cir. 2010) (citations omitted).   However, despite bearing the burden of establishing that his prior lawsuit was a motivating factor behind Awe's actions, see West, 2010 WL 3168424, at *12, Ross' objection suggests in a wholly conclusory fashion that other inmates' referrals are "comparator evidence" of Awe's retaliatory motive.   (Doc. 91, p. 14; see also doc. 67, p. 22 (Ross' original response opposing the summary judgment motion briefly states that summary judgment is inappropriate "particularly in light of the record evidence that other inmates were referred to outside dentists[.]").)   The inmate referral list indicates that the referrals involved a variety of "service[s] requested", "approved service[s]", (doc. 67-11, pp. 4-5), and "offender diagnos[es]", (id., pp. 8-9.)   The list also shows that the referred inmates have diverse "medical" and "physical" histories,

many of which are cut off by the end of the spreadsheet cells.  (Id., pp. 10-13.)  Many of the listed diagnoses include abbreviations.  (See id., pp. 8-9.)  "[T]he district court's role in deciding [a motion for summary judgment] is not to sift through the evidence, pondering the nuances and inconsistencies[.] . . .  The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.  The parties, in turn, bear a concomitant burden to identify the evidence that will facilitate this assessment."  Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted).  Absent any explanation from Ross on why the inmates on the referral list are "similarly situated", the Court declines to construct an argument for him.

Ross also argues that his following testimony creates a factual dispute on the causation element:

> . . . I kept begging [Awe] about . . . being sent out.  He [told] me, . . . well, I'm not going to send you.  So go ahead and file your grievance, or lawsuit, or whatever you're going to do because that's what you're going to do anyway.  He said, it ain't going nowhere.  So I said okay.

(Doc. 91, pp. 13-14 (quoting doc. 60-20, p. 20).)  Ross also testified:

> I wasn't even thinking about a lawsuit when I was trying to get dentures from [Awe].  He the one that brought that up.  He the one talking about, well, I'm not going to send you [for dentures] so quit asking.  He said, I done got you some antibiotic for your mouth.  So I know you fixing to go do whatever you're going to do.  You're fixing to write some grievance up on me or file a lawsuit.  He said, it ain't going nowhere.  He said, go do what you're going to do.  So I said, okay, if that how you feel that's what I will do.  He said, who cares?  I said, okay, but I ain't just going to file no grievance on you.  I said, I'm going to take it all the way to the courthouse when I get to the courthouse.  [And] that's how I went.

(Doc. 60-20, p. 22.)  At most, this testimony indicates that Awe declined to refer Ross to see a dentist, and when Ross expressed dissatisfaction with that decision, Awe made cantankerous comments that he knew Ross had filed a lawsuit before, and that a future lawsuit or grievance regarding Awe's decision not to refer him to a dentist would be unsuccessful.  See Sanchez v.

Henderson, 188 F.3d 740, 747 (7th Cir. 1999) ("[M]ere knowledge of the plaintiff's protected activity prior to an adverse . . . action does not establish a retaliatory motive.").   This is insufficient to create a factual dispute on Awe's retaliatory motive.

The only other evidence Ross points to regarding the causation element is (1) during the time Ross was missing the denture, Awe knew that Ross filed the prior lawsuit, (2) Ross did not receive a replacement denture for approximately 16 months, and (3) Ross suffered pain, infection, chewing difficulty, and sleeping difficulty when he did not have the denture.  (Doc. 91, pp. 13-14.)   This evidence is not indicative of a causal relationship between Awe's actions and Ross' lawsuit.   See Smith, 532 F.3d at 1276.   Accordingly, Ross' objections to the Magistrate Judge's recommendations on his retaliation claim are **OVERRULED**, the R&R is **ADOPTED**, in part, and his retaliation claims is **DISMISSED**.

### III.    Qualified Immunity

Awe also argues that he is entitled to qualified immunity.  (Doc. 60-1, p. 25.)   The Magistrate Judge recommended that the Court reject Awe's qualified immunity argument because it was made in a "conclusory, citationless paragraph[.]"   (Doc. 75, p. 64; see also Harbert Int'l, Inc. v. James, 157 F.3d  1271, 1282 (11th Cir. 1998) ("[a] bald assertion that the acts [at issue in a qualified immunity analysis] were taken pursuant to the performance of duties and within the scope of duties will not suffice." (quotations and citation omitted).)   No party has objected to that recommendation.  (See generally docket.)   Accordingly, the Court rejects Awe's request for dismissal on qualified immunity grounds.

### CONCLUSION

For the foregoing reasons, the Magistrate Judge's Report and Recommendation is **ADOPTED**, as modified by the discussion above.  (Doc. 88.)   Awe's request for summary

judgment on Ross' claims against him, as supplemented, is **GRANTED**, (docs. 60 & 79), and all of Ross' claims against Awe are **DISMISSED**.   Since all of Ross' other claims have been dismissed (see doc. 78, p. 12), the Court **DIRECTS** the Clerk of Court to enter the appropriate judgment of dismissal and to **CLOSE** the case.

     **SO ORDERED**, this 9th day of August, 2023.

_____

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA